I have today a substantive motions calendar with two cases and then a regular day calendar. We will recess briefly after the second substantive motions argument and return with a day calendar. The clerk informs me that counsel who are scheduled to be here for the cases on the day calendar were all here except for Mr. Stern in the third case, Calverton Hills Homeowners. He may surface before we get to his case. All right, we'll hear counsel in Pilepro versus Skyline Steel. Good morning, Your Honor. Julio Ramos, may it please the court for the petitioner Pilepro, LLC. Your Honor, we need seven days, Your Honor. In seven days, the Delaware Chancery Court will make a determination with respect to appointing a trustee in this case. The reason I stress this is because currently, there's a corporate deadlock. No one is in charge of Pilepro, LLC. No one is making- I hate to ask such a simple question. Yes, Your Honor. But aren't you supposed to be on trial right now? We went there this morning at 9 AM and yes, we're supposed to be at trial today. And the judge said you could come talk to us first. Well, he said he relieved us and let us come up here to make our appearances. Yes, Your Honor. Yes, he did. So what's going to happen after you, when you go back? We're going to await the decision of this tribunal to determine what we do. But he hasn't adjourned the trial. He has not adjourned the trial. In fact, he lambasted me and yelled at me this morning, Your Honor. Yelled at you? Yelled at you? Yes. Seems unlikely. Well, it happened. He said it was outrageous, what I did. He couldn't believe that I wrote these papers the Sunday before I filed them. What's the tone of voice when he said- It was raised angered. So with that said, and the court, I have to say, he's called this case his white whale. So that has a lot of implications for someone who's actually read the book Moby Dick. I have. I don't know where we fall in that spectrum of the cast of characters there. But the fact of the matter is that within seven days we would have clarity on this issue. A trustee would be appointed by the Delaware Chancery Court. Take reins of this litigation, provide some guidance for me. I'm a former military person. I believe that there is something as authority and the chain of authority. But in this particular case, in this particular case, PIO Pro LLC, because it was dissolved by the Delaware Chancery Court, as of September 7th of this year, there is no one in charge of the litigation, there's a structural gap here. The federal system is a little bit in uncharted waters, because in the middle of this five year litigation, in the middle of this litigation, what has occurred is that a dissolution proceeding has gone forward, and as a result of the dissolution proceeding, PIO Pro LLC is no longer a valid operating corporation under Delaware law. But the pre-existing litigation that we're here for runs forward. Mr. Ramos, assume for the argument that you proceed with this matter before Judge Furman. What's the prejudice exactly? The prejudice is- How is anything altered on the ground? This is the key fundamental answer to that question, Your Honor. Last week we had intensive settlement discussions. Magistrate Wang convened three separate conferences with all the parties. We got all these different parties together. We came close to an agreement, but there was no one there to lead and shepherd it because they could not agree on the essential terms that both were advocating, meaning the two descending shareholders. The two descending shareholders could not agree on an ultimate outcome with respect to the settlement agreement. They did not. If the trustee was appointed, and when they will be appointed, when they're appointed, that person can basically break the deadlock, create some guidance for the litigation, settle the case, and we all move forward. It's a perfect setting. It only needs seven days to happen. But the court is inflexible. I understand the court's prerogative. I know that the mandate is to try cases. That's what they do. I understand that. The court has said that. But at some point in time, there are equities involved that transcend that. I think this is one of them. Truthfully, and there is a legal process to get to the point where the court should abstain for just a second here. And in the frame of mind of what's happened in the case, if so, there could be resolution to a litigation that's been going on for ten years outside of this case. Is it a bench trial? It's a jury trial, Your Honor. Jury trial. Yes. You selected a jury? No. No. How long will that take ordinarily? Well, that would take a matter of hours, Your Honor. And how long is this case projected to last? Well, let me go back a little bit, Your Honor. This case is, now we're only talking about damages. We've already had a trial two years ago. We had a liability trial. Those issues were resolved. We're only talking about damages now. So the issue really is, the trustee can basically, he could broker a settlement agreement. We could settle this case. In my professional opinion, this case should be settled. It could be settled. We came close to a settlement. But the parties, the two principal actors, the two shareholders cannot agree on that. We have your argument. Thank you, Your Honor. And you can, I'll give you a minute in due course to respond to Mr. Badini, who's going to tell us something else. Good morning, Your Honors. Mr. Badini here for Skyline Steel. I'd like to correct a couple of misstatements that counsel for Palpro made. First of all, he suggested that a trustee was going to be appointed in seven days. That's not correct. There is a hearing on the appointment of a trustee in the Delaware Chancery Court scheduled in seven days. He did not tell you that his client has opposed that appointment. His client has opposed that appointment by saying that the movement has failed to show any corporate deadlock between the two so-called dissenting shareholders. Mr. Ramos represented to this court that there could be no settlement because these two shareholders can't agree. That's not what he told Judge Furman just last week. Just last week, and this is exhibit C to our filings, the transcript of the final pretrial conference. The issue of settlement came up because Judge Furman is, of course, anxious to see us go away. If he can resolve the case, and Mr. Ramos made it clear to Judge Furman that the impediment to settlement had nothing to do with disagreement by the shareholders. It had to do with our client. He blamed our client, and that's fine, we have broad shoulders, but that has nothing to do with any purported dissent. He said, quote, the impressions of the court that it may be an issue with respect to Mr. Heindel, that's one of the shareholders, and Mr. Wendt, that's the other one. Going back many years as an impediment to settlement, I would just state for the court's understanding that that was not the impediment to a settlement. It was more of a bilateral discussion between the parties here, and then he goes on to say they were abruptly canceled by Skyline. He was given an opportunity to withdraw from this case on the basis of a purported dispute between the shareholders. Judge Furman said to him clearly, look, if these two shareholders can't agree on how this case should be defended, perhaps I will entertain a withdrawal motion, because that will put you in an impossible position. He was given that opportunity, he didn't take it. He told Judge Furman in a joint letter that we both submitted that this case should go forward as scheduled at the pretrial conference on September 27th and trial to commence on October 3rd. That is what he said. He said it in the joint letter, he said it at the pretrial conference. He has never asked the district court for a stay in this case, never. And what would a stay accomplish? Under the Delaware statutory scheme, these corporations, even in dissolution, are encouraged to continue to verdict. So that creditors and potential creditors, like my client, can have their claims liquidated. That's the Delaware policy. Issuing a stay here would not be in accordance with Delaware policy. It would be completely contrary to Delaware policy. And with respect to Judge Furman, since he is not here to defend himself, I would just like to say that it's quite unusual, I think, for a practitioner in this region of the state to start out in the Southern District of New York, go up to the Second Circuit, and return to the Southern District of New York all in one morning, and I'm hoping for that outcome. Judge Furman did not indicate he was going to start the trial. He knows what this court's order is. He indicated, which quite correctly, that this court's order did not purport to stay pretrial proceedings. And that's what we had this morning, some more pretrial proceedings. He did indicate, however, and he has told me I may represent this to the panel, that he has a jury pool waiting, and that he is fully prepared, if this court should lift the stay, to proceed to trial immediately after this argument. How long would that trial take? The trial is estimated to last into next week, given that Monday is a holiday. But probably, in my estimation, end by Wednesday or Thursday. And if there are no questions, I'm done. Thank you. Mr. Ramos, take one minute to respond. Yes, Your Honor, and I will. This case involves a long course of litigation, not only in the United States, in Texas, and Delaware, but also overseas, in Switzerland, and in other jurisdictions across the globe. That frankly, this case can be solved with the appointment of a trustee. There is a deadlock. Whatever representations I made to Judge Furman last week changed, because the situation is fluid. There are two direct, two stockholders of the corporation. They are in conflict. I spoke with the attorney representing the descending stockholder, the minority stockholder, and that attorney told me, we cannot agree on anything except one thing. One thing, that you continue to represent PILO Pro in this proceeding to the extent possible. But you do not have settlement authority. And that's the problem. If we don't have settlement authority, then how can this case be resolved? When the judge himself has said he wants the case to be resolved, but his actions in not creating any flexibility or equity make that impossible. It's untenable. In this situation, it should be the rational minds that make the decision whether this case should be settled. All we think is seven days, it can happen. There will be a trustee appointed. It's not a great inconvenience to the court. The court took over a year to make substantive decisions, and two years to reschedule the trial. If we wait seven days, it's worth it. Thank you, Mr. Ramos. The motion for an emergency stay of a scheduled district court trial in the Southern District of New York is denied. Counsel should repair as soon as possible to Judge Furman's courtroom. It is so ordered. Thank you.